

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DEBRA MAZEIKA,                      )
                                    )
           Plaintiff,               )
                                    )
    v.                              )    No. 05 C 415
                                    )
ARCHITECTURAL SPECIALITY            )    Judge Rebecca R. Pallmeyer
PRODUCTS, INC., PATRICK WALSH,      )
and RENEE WALSH,                    )
                                    )
           Defendants.              )

## MEMORANDUM OPINION AND ORDER

Debra Mazeika ("Debra"), a former employee of Architectural Specialty Products, Inc. ("ASP"), has brought a thirteen-count complaint against ASP, Patrick Walsh ("Patrick"), an employee of ASP, and Patrick's wife, Renate Walsh,[1] seeking damages for sexual discrimination in violation of Title VII of the Civil Rights Act of 1964, sexual harassment, hostile work environment, retaliatory discharge, intentional infliction of emotional distress (hereinafter "IIED"), defamation, violation of the Employee Retirement and Income Security Act, ("ERISA"), 29 U.S.C. § 1132 et seq., assault, and negligent infliction of emotional distress. Defendant ASP now moves to dismiss Counts IV (alleging IIED against ASP) and VI (alleging defamation against ASP) for failure to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6). (ASP's Mot. to Dismiss ¶ 1.) Defendants Patrick and Renate Walsh move to dismiss Counts VII through XIII, in which Plaintiff alleges claims of negligent and intentional infliction of emotional distress and defamation against

---

[1] Because the Walsh Defendants have the same last name, the court refers to them by their first names.

both Walsh Defendants and an assault claim against Defendant Renate Walsh. For the reasons stated below, the court denies ASP's motion to dismiss Count IV and grants its motion to dismiss Count VI, and denies the Walsh Defendants' motion.

## BACKGROUND

For purposes of these motions, the court accepts as true the following factual allegations taken from the Plaintiff's Complaint. Debra Mazeika began working at ASP as an accountant in early July of 1998. (Complaint ¶¶ 3, 10.)[2] In April 2004, Patrick, who worked in the engineering/project management division of ASP, subjected Plaintiff to sexual harassment and "defamed" her, and Patrick's wife Renate, who was not employed by ASP but apparently had access to the office, subjected her to intimidating, hostile, and threatening conduct at her office at ASP. (Id. ¶¶ 5, 6, 13-14.) Believing Patrick's conduct to be illegal, Plaintiff "informed her employer, Defendant ASP;" she does not identify the individual(s) to whom she spoke or the precise date(s) of the communications. (Id. ¶ 14).

Plaintiff alleges that she was routinely treated differently than similarly situated male counterparts because of her sex, including, but not limited to

    a.    sexual harassment by managers, employees and agents of Defendant ASP via being forced to endure a hostile work environment, inappropriate comments and conduct by said employees and agents;

    b.    within weeks of complaining to her supervisor and owner of the company of the sexual harassment, Plaintiff was informed she was being terminated;

    c.    Plaintiff was terminated from her employment;

---

[2]     The complaint does not identify the business in which ASP is engaged.

> d. Defendant ASP hired a male from outside the company who was less qualified to fill Plaintiff's position.

(Id. ¶ 15.) Plaintiff alleges this conduct of supervisors, employees, and agents of ASP created a hostile work environment and constituted an adverse employment action. (Id. ¶¶ 16-17.) She made numerous complaints to ASP's management and owner, (id. ¶ 19), but ASP failed to take steps to remedy the harassment, discrimination and hostile work environment, or to correct the conduct of its employees and agents. (Id. ¶ 20.) Instead, on May 28, 2004, ASP terminated Plaintiff's employment. (Id. ¶ 33.) The complaint does not identify the individual(s) who made this decision, nor those who notified her of it.

ASP's conduct caused Plaintiff severe emotional distress, including extreme anger, resentment, depression, worry, anxiety, and stress. (Id. ¶ 46.) She also suffered financial damage, including loss of past and future pay, loss of career opportunities, loss of employment benefits, damage to her reputation, attorney's fees, and other costs. (Id. ¶ 47.) Plaintiff also claims to have suffered physical harm. (Id.)

At least part of the humiliation and distress that Plaintiff suffered was the result of the conduct of Patrick Walsh. Plaintiff alleges that, while acting within the course and scope of his employment with ASP, Patrick falsely told other employees of ASP, and his wife, Renate, that he was having an affair with Debra, and made other "untrue, vulgar and offensive statements." (Id. ¶¶ 57-58.) She alleges as well that Renate herself told Patrick and other employees that Patrick was having an affair with Debra (the court presumes this was not news to Patrick). (Id. ¶ 92.) These statements falsely accused Plaintiff of fornication or adultery, inability to perform or want of integrity in the discharge of her duties, and lack of ability in her trade or business. (Id. ¶ 59.) ASP failed to act to

prevent this behavior. (Id. ¶ 65.) As a result, Plaintiff suffered injury to her personal reputation, as well as lost past and future wages, lost future earning potential, lost employee benefits, damage to her professional reputation, lost ability to work, and the loss of other incidentals of employment. (Id. ¶¶ 66-68.)

## DISCUSSION

A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) tests the sufficiency, not the merits, of the complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). A complaint should not be dismissed for failure to state a claim unless no relief could be granted under any set of facts consistent with the allegations. *See Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984). The court therefore accepts all well-pleaded allegations as true, draws all reasonable inferences in favor of Plaintiff, and construes the allegations in the light most favorable to her. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A plaintiff is not required to plead legal theories or the facts which would establish the elements of a legal theory, and does not need to set forth a complete picture of the alleged wrongdoing. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512-14 (2002); *Higgs v. Carver*, 286 F.3d 437 (7th Cir. 2002); *American Nurses' Association v. Illinois*, 783 F.2d 716, 727 (7th Cir. 1986).[3]

Defendant ASP has moved to dismiss Counts IV and VI, and Patrick and Renate have moved to dismiss all of the counts against them. The court will address those motions in turn.

---

[3] Defendants argue that the court need not accept conclusory legal allegations on a Rule 12 motion, citing *Mitchell v. Archibald & Kendall, Inc.*, 573 F.2d 429, 432 (7th Cir. 1978), *Coates v. Illinois State Bd. of Educ.*, 559 F.2d 445, 447 (7th Cir. 1977) and *Mollfulleda v. Phillips*, 882 F. Supp. 689, 692 (N.D. Ill. 1994). Each of these cases, and others that so hold, predate *Swierkiewicz* and *Thomson*, and to the extent they suggest a heightened pleading standard, are not controlling here.

I.  ASP's Motion

   A.  Count IV: Intentional Infliction of Emotional Distress

ASP argues that Plaintiff's claim for intentional infliction of emotional distress (hereinafter, "IIED") must be dismissed because it is preempted by the Illinois Workers' Compensation Act (IWCA), 820 ILCS 305/5(a), 305/11, and because Plaintiff's allegations are insufficient to state a claim for IIED as a matter of law.

   1.  Preemption

The IWCA's exclusivity provision bars employees from bringing any common law or statutory claims for accidental injuries "while engaged in the line of [her] duty as such employee." *Id.*; *see Hunt-Golliday v. Metro. Water Reclamation Dist. of Greater Chicago*, 104 F.3d 1004, 1016 (7th Cir. 1997) (emotional distress caused by co-worker's actions are accidental from the employer's point of view, such that recovery is preempted by IWCA); *Contreras v. Suncast Corp.*, 129 F. Supp. 2d 1173, 1183 (N.D. Ill.), *aff'd* 237 F.3d 756 (7th Cir. 2001). This statute, however, does not bar all common law actions against employers. A claim may fall outside the scope of the statute if the plaintiff shows "(1) that the injury was not accidental; (2) that the injury did not arise from his or her employment; (3) that the injury was not received during the course of employment; [or] (4) that the injury is not compensable under the act." *Id.*; *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 463, 564 N.E.2d 1222, 1225 (1990).

Because the actions Plaintiff complains of here occurred between her and other employees at the workplace, the conduct complained of arose out of her employment and the injuries she suffered were suffered in the course of her employment. (*See* Complaint ¶¶ 3, 11-21, 44-48, 56-59.) Therefore, exceptions (2) and (3) do not apply. *See Juarez v. Ameritech Mobile Comms., Inc.*, 957 F.2d

317, 323-24 (7th Cir. 1992) (IIED inflicted by a fellow employee in the form of sexual harassment arises out of employment). And because emotional distress is compensable under the IWCA, exception (4) is also not applicable. *Collier v. Wagner Castings Co.*, 81 Ill. 2d 229, 237, 408 N.E.2d 198, 202 (1980); *see also Socorro v. IMI Data Search, Inc.*, No. 02 C 8120, 2003 WL 1964269, *4 (N.D. Ill. April 28, 2003). Additionally, IIED is compensable under the IWCA, so exception (4) does not apply. Thus, in order to avoid preemption, Debra must show that ASP did not accidentally injure her.

When a plaintiff bases a claim against an employer on the intentional acts of a co-worker, the harm is considered accidental under the IWCA and the claim is preempted, unless the plaintiff can show the employer or its "alter ego" directed or expressly authorized the injurious acts. *Meerbrey*, 139 Ill. 2d at 464-65, 564 N.E.2d 1222, 1226; *see also Grant v. Coken Co.*, No. 01 C 6400, 2005 WL 300388, *3 (N.D. Ill. Feb. 1, 2005); *Temores v. SG Cowen*, 289 F. Supp. 2d 996, 1007 (N.D. Ill. 2003); *Robinson v. Roney Oatman, Inc.*, No. 97 C 8964, 1999 WL 98338, *9 (N.D. Ill. Feb. 19, 1999). To qualify as an "alter ego," an employee must "speak for the company." *Santos v. Boeing Co.*, No. 02 C 9310, 2004 WL 1384724, *4 (N.D. Ill. May 11, 2004). Low-level supervisory employees routinely fall short of this level. *Id.*; *see also Ratay v. Montgomery Ward & Co.*, No. 92 C 3965, 1992 WL 281357, *4 (N.D. Ill. Oct. 8, 1992).

Apart from Patrick Walsh, whose role in the company is unexplained, Plaintiff has not identified the person(s) who harassed her. She does allege that "managers, employees and agents of Defendant ASP" were involved, (Complaint ¶ 15a), and at this stage the court must assume that one or more of them may have been in such a position of authority as to qualify as an "alter ego" of ASP, and therefore make the conduct she suffered intentional on the part of ASP. *See Otterbacher v.*

*Northwestern Univ.*, 838 F. Supp. 1256, 1263 (N.D. Ill. 1993) (a supervisor, when directing an employee's job duties, may have acted as an "alter ego" and inflicted an injury deemed not accidental within the meaning of the IWCA); *Reynolds v. Hitachi Seiki U.S.A., Inc.*, No. 92 C 8281, 1993 WL 384535, *3 (N.D. Ill. Sept. 28, 1993) (a member of senior management qualifies as an "alter ego" whose conduct is not deemed accidental under IWCA).

Plaintiff was injured in the course of her work, at work, by a fellow employee. The type of injury she suffered is covered under the IWCA. Drawing all reasonable inferences in favor of Plaintiff, the complaint alleges that ASP intentionally injured her through the conduct of one or more of its "alter egos." Because the court can reasonably infer the injury was not accidental, ASP's motion to dismiss the claim as preempted by IWCA is denied without prejudice.

### 2. Insufficiency of the Emotional Distress Allegations

ASP also argues that Count IV must be dismissed because it does not allege facts sufficient to state a cause of action for IIED in Illinois. (ASP's Mot. to Dismiss Counts IV and VI ¶ 5.) To establish IIED under Illinois law, a plaintiff must show "1) the defendant's conduct was extreme and outrageous; 2) the defendant intended to inflict severe emotional distress, or knew there was a high probability its conduct would do so; and 3) the defendant's conduct caused severe emotional distress." *Franciski v. Univ. of Chicago Hosp.*, 338 F.3d 765, 769 (7th Cir. 2003) *citing Doe v. Calumet City*, 161 Ill. 2d 374, 392, 641 N.E.2d 498, 506 (1994). ASP argues that Plaintiff has not alleged conduct that was extreme and outrageous. (ASP's Mot. to Dismiss Counts IV and VI ¶ 5.)

Whether conduct is extreme and outrageous turns on the facts and circumstances of the particular case. *Doe*, 161 Ill. 2d at 392, 641 N.E.2d at 507. As the Seventh Circuit has recognized, the Illinois Supreme Court considers three factors in evaluating the outrageousness of a defendant's

7

conduct. *Franciski*, 338 F.3d at 769. First, the more control the defendant has over the plaintiff, the more outrageous the conduct is likely to be. Second, the less reasonable the defendant's belief that its objective was legitimate, the more likely the conduct was outrageous. Third, if the defendant was aware the plaintiff was "peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity," it is more likely the conduct was outrageous. *Id.*

Generally, conduct must be extraordinarily egregiouss to support an IIED claim. The Seventh Circuit has described the necessary showing as conduct "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of human decency." *Oates v. Discovery Zone*, 116 F.3d 1161, 1174 (7th Cir. 1997). The test is not an easy one: For example, the Seventh Circuit held that removing parents from a pediatric intensive care unit and barring them from seeing their dying infant son was not outrageous; the hospital's interest in keeping order outweighed the disruptive parents' interest in being with their child, despite the hospital's physical power over them at that time, and their peculiar emotional susceptibility given the situation. *See Franciski*, 338 F.3d at 769-70.

In the employment context, a claim of IIED requires more than what is necessary to establish a claim of sexual harassment. *Piech v. Arthur Andersen & Co.*, 841 F. Supp. 825, 831 (N.D. Ill. 1994). Indeed, the circumstances surrounding a typical or even an atypical employment dispute will rarely rise to the level of outrageous conduct. *See Quantock v. Shared Mktg. Servs., Inc.*, 312 F.3d 899, 905 (7th Cir. 2002) (affirming dismissal of IIED claim on ground that unwelcome sexual harassment in the workplace, including a request for oral sex, an invitation to participate in a "threesome," and a request for "phone sex," were not extreme and outrageous); *Oates*, 116 F.3d at 1174 (affirming dismissal of IIED claim; supervisor's refusal to remove from the workplace a picture

depicting African-American employee as monkey was not truly extreme and outrageous); *Harriston v. Chicago Tribune Co.*, 992 F.2d 697 (7th Cir. 1997) (affirming dismissal of IIED claim against employer for not permitting plaintiff to supervise white subordinates, reprimanding her for no reason, falsely accusing her of poor performance, excluding her from office activities and decisions, forcing her out of a management position, not giving her a promised promotion, monitoring her calls and failing to act when her vehicle was vandalized on company property). Conduct which is "inconsiderate, rude, vulgar, uncooperative, unprofessional and unfair" without more, does not constitute IIED. *Pommier v. James L. Edelstein Enters.*, 816 F. Supp. 476, 483 (N.D. Ill. 1993).

Of those cases where the conduct was sufficiently outrageous to support an IIED claim, generally the defendant has had more than simply some power or influence over the defendant, as in an employment dispute. For example, in *Doe*, the plaintiff's home had been broken into and she had been beaten and sexually assaulted. She escaped and called the police, but in order to do so was forced to leave her young son and daughter behind. When the police arrived, the officer in charge refused to break down the door to apprehend the intruder, fearing liability for property damage, and restrained the plaintiff from returning to the apartment herself. 161 Ill. 2d at 394, 641 N.E.2d at 507-08. As a result of his inaction, the plaintiff's minor daughter was raped repeatedly. *Id.* at 383, 641 N.E.2d at 502-03. The court found these circumstances supported an IIED claim against the police officer. In another context, the Illinois Supreme Court held defendants who exercised great economic leverage over the plaintiff acted in an extreme and outrageous manner when they acted to defraud the plaintiff out of millions of dollars. *McGrath v. Fahey*, 126 Ill. 2d 78, 93, 533 N.E.2d 806, 812 (1988).

In some instances it is possible for plaintiffs to allege facts in sufficient detail to permit the court to determine that the allegations do not state a claim for IIED–that is, they "plead themselves out of court," see Croft v. Inlight Risk Mgmt., Inc., No. 01 C 1766, 2002 WL 226859, *5 (N.D. Ill. Feb. 14, 2002); Lewis v. Cotton, 932 F. Supp. 1116, 1118 (N.D. Ill. 1996). Here, in contrast, Plaintiff's allegations in Count IV do not precisely identify the extreme and outrageous behavior that she suffered. See Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002) (reversing dismissal, at pleading stage, of ambiguous allegations that might be consistent with facts that support a claim). This court is not prepared to conclude that there are no set of facts consistent with the complaint that would rise to the level of outrageousness necessary to constitute IIED. Recognizing that this claim has merit only if Plaintiff can ultimately prove that the harassment she suffered was truly extreme and outrageous, the court denies ASP's motion to dismiss Count IV.

### B. Count VI: Defamation

In Count VI, Debra asserts that Defendant ASP is liable for defamation arising out of the statements made by Patrick. A statement is defamatory if it "impeaches a person's reputation and thereby lowers that person in the estimation of the community or deters third persons from associating with that person." Schivarelli v. CBS, Inc., 333 Ill. App. 3d 755, 759, 776 N.E.2d 693, 696 (1st Dist. 2002). To be defamatory per se, a statement must be "so obviously and naturally harmful to the person to whom it refers, that injury to his reputation may be presumed." Id. at 759, 776 N.E.2d at 697. Illinois law recognizes five categories of statements that constitute defamation per se: 1) those imputing commission of a crime; 2) those imputing infection with a loathsome communicable disease; 3) those imputing an inability to perform or want of integrity in the discharge of duties of office or employment; 4) those that prejudice a party or impute lack of ability, in his or

her trade, profession or business; and 5) those imputing adultery or fornication. *Id.* at 759, 776 N.E.2d at 697.

Plaintiff alleges that while acting within the course and scope of his employment, Patrick falsely and without authorization or permission told other ASP employees and his wife Renate that he was having an affair with Plaintiff, among other untrue, vulgar and offensive statements. (Complaint ¶¶ 57, 58, 61, 63, 64.) Patrick's statement that he was having an affair with Plaintiff certainly imputes adultery or fornication. Drawing all reasonable inferences in the light most favorable to Plaintiff, the other untrue, vulgar and offensive statements imputed an inability to perform or want of integrity in the discharge of her duties of office or employment, or imputed a lack of ability in her trade, profession or business. (*See* Complaint ¶ 59.)

Plaintiff argues that ASP should be held liable for the defamatory remarks made by Patrick, both through the doctrine of *respondeat superior*, and because ASP ratified Patrick's conduct by failing to act to prevent it. (Complaint ¶ 65-66.) Plaintiff makes no mention of the ratification theory in her response to ASP's motion to dismiss and the court concludes she has abandoned it. In any event, Illinois law requires that, for a third party to be held liable under a ratification theory, plaintiff must establish that the third party derived a benefit from the alleged conduct, *see Horowitz v. Holabird & Root*, 212 Ill.2d 1, 14, 816 N.E.2d 272, 280 (2004); *Stathis v. Geldermann, Inc.*, 295 Ill. App. 3d 844, 857, 692 N.E.2d 798, 808 (5th Dist. 1998). Plaintiff has not alleged or suggested that ASP could possibly have benefitted from Patrick's conduct. For the reasons explained here, the court concludes that ASP is not liable for Patrick's alleged actions under the doctrine of *respondeat superior*, either.

Under traditional rules of vicarious liability, employers are liable for the acts of their employees within the scope of their employment. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 756

(1998). In addition to showing that the conduct is within the scope of employment, the motivation for the conduct must be based in part on a desire to further the interests of the employer. *Id.* at 743-44; *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 913 (7th Cir. 1994). The Illinois Supreme Court has explained that before the employer will be liable under the doctrine of *respondeat superior*, the plaintiff must also show that the conduct at issue is of the kind the employee is employed to perform, and that it occurred substantially within the authorized time and space limits of employment. *Pyne v. Witmer*, 129 Ill. 2d 351, 360, 543 N.E.2d 1304, 1308 (1989).

Plaintiff has not alleged that defamation is the kind of activity Patrick is employed to perform, nor that dissemination of information generally is one of his responsibilities. The court cannot reasonably infer that Patrick or any other employees of ASP are employed for the purpose of harassing or making false statements concerning other employees. Nor is there any reasonable basis to conclude that Patrick's actions or those of other employees of ASP were calculated to advance the interests of ASP. In fact, because Patrick's conduct allegedly stifled Plaintiff's work, (Complaint ¶¶ 14, 15(a)), and Plaintiff a was an excellent employee, who "at all times. . . performed her job to the legitimate expectations of her employer and beyond," (Complaint ¶ 11), Patrick's conduct would appear to be contrary to ASP's best interests. Therefore, Plaintiff has failed to state a claim against ASP for defamation under the theory of *respondeat superior*.

## II. The Walsh Defendants' Motion

Defendants Patrick and Renate Walsh seek dismissal of the counts against them on two grounds: first, that the court lacks supplemental jurisdiction over those counts and second, that they fail to state claims for relief. Neither argument requires lengthy discussion.

As the Seventh Circuit explained well in *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995), the court may exercise jurisdiction over Plaintiff's state law claims so long as there is a "loose factual connection between" those claims and the federal claims she asserts. That test is readily met here. As noted, in Counts VII through XIII, Plaintiff alleges claims of negligent and intentional infliction of emotional distress and defamation against both Walsh Defendants and an assault claim against Defendant Renate Walsh. In *Ammerman v. Sween*, 54 F.3d 423 (7th Cir. 1995), a college laboratory instructor brought a Title VII action against her employer and a coworker who allegedly sexually harassed her, and a state law assault claim against the harasser. The Seventh Circuit affirmed dismissal of the Title VII claim against the coworker, but agreed with the district court that it properly exercised jurisdiction over the assault claim. The court observed that "the essential facts of the Title VII claim related to the college's actions following the alleged assault," and the assault claim was therefore sufficiently connected to the Title VII claim as to confer supplemental jurisdiction.

So too here. Plaintiff's allegations against Patrick and his wife, Renate, all grow out of Patrick's allegedly harassing behavior in the workplace. Plaintiff's claims against ASP relate, in substantial part, to ASP's alleged failure to respond effectively to Plaintiff's complaints about Patrick's behavior. *Gutzwiller v. City of Chicago*, No. 03cv7598, 2004 WL 1595369 (N.D. Ill. July 13, 2004), the unreported decision on which Defendants rely, is distinguishable; the assault claims in that case, brought by a probationary police officer against her husband, a non-employee, were unrelated to her claims against the City of discrimination on the basis of race, sex, and a hearing disability. The court suggested that, had plaintiff been required to prove the truth of her domestic violence claim against her husband, the outcome might have been different. *Id.* at *3-4. Here, by contrast, Defendants

acknowledge that Plaintiff's defamation claims support "all claims alleged against Defendant ASP ...." (Walsh Memorandum, at 2.) Plaintiff's allegation that Renate Walsh assaulted Plaintiff in her own office (Complaint ¶ 104) is puzzling; the court is uncertain why Renate was in the workplace at all. Still more puzzling is Plaintiff's allegation that Renate defamed Plaintiff by telling Patrick that Patrick had had an affair with Plaintiff (Id. ¶ 92); Patrick himself would presumably know better than anyone that the defamatory statement was false. The court is nevertheless satisfied that these allegations are sufficiently connected to Plaintiff's federal claims so as to support the exercise of jurisdiction here.

The Walsh Defendants' remaining challenges to the claims against them all relate to insufficiency or vagueness of Plaintiff's factual allegations. For the reasons explained above, those arguments are inconsistent with the liberal pleading standards established by the Federal Rules, which require no more than a short and plain statement of the claim for relief. To the extent Defendants seek additional factual detail concerning Plaintiff's claims against them, they are free to obtain it in discovery and to seek summary judgment on those claims, if appropriate.

## CONCLUSION

For the reasons stated above, ASP's motion to dismiss (Doc. No. 10) is denied with respect to Count IV and granted with respect to Count VI. Plaintiff's defamation claim against ASP is dismissed. The Walsh Defendants' motion to dismiss (Doc. No. 20) is denied.

ENTER:

Dated: July 26, 2005

*[signature]*
REBECCA R. PALLMEYER
United States District Judge